**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **HESHAM ISMAIL,** | : |  |
|  | : |  |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:19-cv-1305** |
|  | : |  |
| **v.** | : | **(JUDGE MANNION)** |
|  | : |  |
| **McDERMOTT INTERNATIONAL INC.,** | : |  |
|  | : |  |
| **Defendant** | : |  |

## MEMORANDUM

Plaintiff Hesham Ismail sues Defendant McDermott International Inc., which was the parent company of his past employer, under Title VII of the Civil Rights Act of 1964. He claims that, due to his Arab race, Muslim faith, and Egyptian national origin, Defendant discriminated against him and created a hostile work environment. He also claims that Defendant retaliated against him for reporting this discrimination. The parties conducted discovery on these claims, and Defendant has moved for summary judgment.

## I.    BACKGROUND

Starting in February 2013, Plaintiff was employed as an engineer by CB&I LLC, an engineering, procurement, and construction company. (Doc.

138-1 ¶1–3). He reported to CB&I's Plant Services Group at a Pottsville, Pennsylvania facility owned and operated by Honeywell. (Id. ¶9).

CB&I was owned by Chicago Bridge & Iron Company, N.V., which, in 2018, combined with Defendant, such that Defendant was CB&I's parent company. (Id. ¶4). Because of a 2020 bankruptcy reorganization, CB&I's ultimate parent company is now McDermott International, Ltd. (Id. ¶6).[1]

Plaintiff's direct supervisor was John Neff, a CB&I manager based in Virginia. (Id. ¶10; Doc. 138-5 ¶¶1–2). At the Pottsville facility, Plaintiff's work was assigned and overseen by Judson Weiss, a Honeywell Engineering manager. (Doc. 138-1 ¶14).

In the summer of 2013, Plaintiff's department held a potluck lunch, but Plaintiff did not attend because he was fasting for Ramadan. A coworker told Plaintiff that, when Weiss was informed why Plaintiff did not attend the potluck, Weiss was "taken back by it." (Id. ¶16; Doc. 138-4 at 102:24–103:13).

Plaintiff met with Neff for a performance review in August 2014. (Doc. 138-1 ¶17). Neff told him that there were concerns about his communication

---

[1] According to Kimberly Wolford, the Assistant Corporate Secretary for Defendant and McDermott International, Ltd., Defendant no longer has ownership interest in CB&I. (Doc. 138-3 ¶5). Ms. Wolford's declaration does not specify the organizational relationship between Defendant and McDermott International, Ltd.

skills, including that one employee reported having communication problems with Plaintiff due to his English language skills. (Id. ¶18). Plaintiff and Weiss had a meeting a few weeks later, during which, according to Plaintiff, Weiss said things like, "I don't think you know what you're doing," "I don't think you're focused enough," "I don't think you know how to be a good engineer," and "I don't think you know how to do your job." (Id. ¶22–23; Doc. 138-4 at 277:19–278:14). Following this meeting, Weiss emailed Plaintiff about Work Breakdown Structures (project organizational systems). (Doc. 138-1 ¶24; Doc. 138-4 at pgs. 123–124). Plaintiff replied, answering Weiss' question and including a lengthy narrative about his own professional history. (Doc. 138-1 ¶25; Doc. 138-4 at pgs. 122–124). Weiss forwarded Plaintiff's response to Neff, writing: "Just wanted to keep you abreast on some of the odd-ness." (Doc. 138-1 ¶26; Doc. 138-4 ¶122).

In October 2014, Plaintiff asked to have a confidential meeting with William Olp, the Honeywell plant manager. (Doc. 138-1 ¶29; Doc. 138-4 at 54:2–7, 164:8–18). He told Olp that Weiss was "targeting [him], treating [him] unfairly," and making him do "three times as much work as everybody else." (Doc. 138-1 ¶29; Doc. 138-4 at 165:4–12).[2] He also asked for Olp's "help to

---

[2] Plaintiff testified that he told Olp he was being discriminated against, he did not remember whether he mentioned that it was because he was Arab, Muslim, or Egyptian. (Doc. 138-4 at 165:13–22).

get out of [Weiss's] department," (Doc. 138-4 at 165:4–9). Olp told him that he was "welcome to apply" for a position in a different department, but Olp "wasn't going to get involved." (Id. at 173:21–174:3).

Plaintiff emailed Neff at Neff's Honeywell email account on November 21, 2014, expressing frustration with his treatment in Pottsville and a desire to transfer to a different CB&I location. (Doc. 138-4 at pgs. 113–115). Neff (who had both CB&I and Honeywell email addresses but did not regularly use the Honeywell one) did not respond to this email and did not learn about it until he later received a copy from the Pennsylvania Human Relations Commission. (Doc. 138-5 ¶12).

Weiss terminated Plaintiff's employment with Honeywell in February 2015, and Neff terminated him from CB&I the same day. (Doc. 138-4 at 126:14–11). According to Plaintiff, when he asked Weiss why he was being fired, Weiss said: "There's just something about you. I don't know what it is. There's just something that makes me uncomfortable." (Doc. 138-4 at 69:14–23). And when Neff terminated him, Plaintiff told him that it was happening because he was Muslim, and that he was being harassed and targeted. (Doc. 138-4 at 162:8–163:10). Neff has declared that he terminated Plaintiff "due to a loss of confidence in his employment, (Doc. 138-5 ¶13), and under

"Action Taken," Plaintiff's exit package document provided: "Loss of confidence." (Doc. 138-4 at pg. 97).

Following his termination, Plaintiff applied for a CB&I engineering position in North Carolina. (Doc. 138-1 ¶44). He notified Neff of his application. (Id. ¶45). Plaintiff did not hear back; CB&I cancelled the position and did not hire anyone for the role. (Doc. 138-4 at 270:20–22; Doc. 138-6 ¶¶3–5).

## II.   PROCEDURAL HISTORY

Plaintiff filed an employment discrimination complaint against CB&I and Honeywell with the Pennsylvania Human Relations Commission in July 2015. (Doc. 138-4 at pgs. 104–112). The PHRA conducted an investigation and determined that there was insufficient evidence gathered to establish probable cause. (Id. pgs. 118–121). The Equal Employment Opportunity Commission issued a right to sue letter on July 26, 2019. (Doc. 1 at 9).

Plaintiff initiated this action that day. (Doc. 1). He filed his First Amended Complaint in January 2020. (Doc. 20). The case was stayed for about six months pending Defendant's Chapter 11 Bankruptcy proceedings, (Doc. 28; Doc. 36). Defendant then moved to dismiss the First Amended Complaint's 42 U.S.C. §1981 claim, (Doc. 37), which motion the court

granted and allowed Plaintiff leave to file a second amended complaint. (Doc. 83). Plaintiff filed the Second Amended Complaint (the "Complaint") on April 22, 2021, in which he brings claims of discriminatory termination and failure to hire, hostile work environment, and retaliation. (Doc. 84).[3] Defendant answered the Complaint. (Doc. 88). Discovery followed, and Defendant has filed the instant motion for summary judgment. (Doc. 138).

### III.   LEGAL STANDARD

Before trial (and within 30 days of the close of discovery), "a party may move for summary judgment, identifying each claim … on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if (1) "there is no genuine dispute as to any material fact" and (2) "the movant is entitled to judgment as a matter of law." *Id.*

Material facts are those that "might affect the outcome of the suit under the governing law," and a dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[3] The Second Amended Complaint also named as Defendants Honeywell and two Honeywell employees. (Doc. 84). The court granted the Honeywell Defendants' motion to dismiss, (Doc. 123), leaving McDermott as the only remaining Defendant.

"[I]n assessing the genuineness of a potential factual dispute, inferences from the underlying facts should be drawn in favor of the nonmoving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). But summary judgment in favor of the movant is warranted "if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it bears the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[M]ere allegations" are not sufficient to establish a genuine dispute of material fact." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

The moving party has the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine dispute of material fact.'" *Celotex*, 477 U.S. at 323. If it satisfies this burden, "the opposing party 'must do more than simply show that there is some metaphysical doubt as to material facts.'" *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). At this stage, the court "may not make credibility determinations or engage in any weighing

of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

As noted above, inferences from the underlying facts must be drawn in the nonmoving party's favor. But the nonmoving party must also comply with Local Rule 56.1, which requires that it submit a statement responding to the moving party's statement of material facts; if it does not, the Rule provides that those facts will be deemed admitted. This rule applies with equal force to parties proceeding pro se. *See Sanders v. Beard*, 3:09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. 2010) ("While parties acting *pro se* are given leeway in certain requirements, they are not excused from complying with court orders and the local rules of court."). Because Plaintiff did not submit a responsive statement as required by Local Rule 56.1, the facts stated in Defendant's statement of material facts are deemed admitted. (Doc. 138-1).

## IV.   DISCUSSION

### A. Discrimination

Title VII provides that "[i]t shall be an unlawful employment practice for an employer … to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

A complainant bringing a charge of discrimination "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do so, he must show that (1) he "is a member of a protected class," (2) he "was qualified for the position he sought to attain or retain," (3) he "suffered an adverse employment action," and (4) "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013).

Defendant argues that Plaintiff has not established the fourth element of a Title VII discrimination claim, asserting that the various workplace incidents he recounts do not constitute circumstances giving rise to an inference of discrimination. (Doc. 139 at 17–23). Specifically, it addresses his testimony that: (1) a coworker told Plaintiff that Weiss was "taken back" upon learning that he skipped a potluck lunch due to Ramadan; (2) that Neff informed him of an employee's report of communication issues relating to Plaintiff's English-language skills; and (3) that Weiss told Plaintiff that

"[t]here's just something about you … that makes me uncomfortable." According to Defendant, this testimony relies on Plaintiff's "personal belief, conjecture, and speculation," and so is insufficient to support an inference of discrimination. (Doc. 139 at 10).

To be clear, the testimony discussed above describes specific occurrences, not merely Plaintiff's belief about motivations. Still, "[i]nferences must flow *directly* from admissible evidence"; "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (emphasis added). And "[t]he line between reasonable inferences and impermissible speculation is often thin." *Id.* So it must be determined here whether a reasonable inference of intentional discrimination may be drawn from the facts recounted by Plaintiff, or whether such an inference would instead be based merely on speculation or conjecture.

The court first considers the statement made by Neff, an employee of Defendant. Neff simply reported a coworker's concern. That coworker is not alleged to have had decision making authority, and the mere fact that Neff relayed the message does not warrant an inference that his actions owed to intentional discrimination.

The court next considers the conduct and statements attributed to Weiss, who worked not for Defendant but for Honeywell.

Honeywell and Weiss are no longer Defendants to this suit. Whatever Weiss's reactions or comments may imply about *his* motivations, Plaintiff has not shown that they give rise to any inference of intentional discrimination on the part of Neff.  He admits that Neff rarely visited the Pottsville facility, (Doc. 138-4 at 36:11–37:7), and there is no evidence connecting him to Weiss's reactions or comments.

Nor does Plaintiff offer evidence of similarly situated persons treated more favorably than him. *See Mandel*, 706 F.3d at 170 ("[T]he identification of a similarly situated individual outside the protected class may give rise to an inference of unlawful discrimination."); *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981) ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.").

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record … or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The only evidence Plaintiff cites in his brief is a series of emails. The first, which is an

email he sent to Neff suggesting a performance review quantification system, does not give rise to an inference of discrimination. (Doc. 140-1). The second is an exchange between Plaintiff and Neff in which Plaintiff asks a question about timesheets and follows up regarding his previous suggestion; Neff responds only to the timesheets question. (Doc. 140-2). Plaintiff asserts that this evidence demonstrates that Neff "was intentionally ignoring addressing my harassment claims." (Doc. 140 at 4). While Neff's response appears to ignore Plaintiff's question about the performance review system, the court cannot draw from this an inference that Neff was discriminating against Plaintiff based on his race, religion, or national origin.

The third citation is an email from Plaintiff to Weiss that Plaintiff then forwarded to Neff. (Doc. 140-3). In the message, Plaintiff summarizes a meeting between himself and Weiss, in which Weiss allegedly criticized Plaintiff for his performance. Plaintiff does not explain how the events described in this email give rise to an inference of discrimination; he portrays the interaction more generally as an example of mistreatment. The court can discern in this email no connection to race, religion, or national origin.

The final email is a November 21, 2014 message from Plaintiff to Neff, in which he asks Neff for advice and describes interactions with other supervisors related to a certain project, meetings with Weiss, and his

unsuccessful application for an engineering position with Honeywell. (Doc. 140-4). He further writes that he asked coworkers to help him understand the cause of his professional issues, and that "their best explanation is that I am being 'blackballed' out of here." (Id. at 3). According to Plaintiff, his coworkers "confided" in him that:

> [E]ver since Ramadan, when I had to fast during the daylight hours for the whole month, and there was a Potluck Lunch that I could not eat at, that people found out that I was a practicing muslim and some people did not take that well … being the only 'Arab' in a purely conservative area. I am the only Muslim in a 50-mile radius of here. I don't want to think that this is Jud's reason but ever since Jud knew I was a Muslim, that is when my projects exceeded 10. In fact, at one point, they were nearly 20, far beyond the typical 5 +/- projects most other engineers have. I am the only person in this trailer that Jud ever cursed at.

(Doc. 140-4).

It is undisputed that Neff did not read this email. (Doc. 138-1 ¶36). Even if he had, his awareness of Plaintiff's and Plaintiff's coworkers' conjectures of discrimination would not give rise to an inference that *he* acted with discriminatory intent.

Plaintiff further argues that "[t]he fact that I was one of only 2 non-whites at the whole rural facility, and the only minority of any kind that worked for Judson, should prove that despite my exceptional job performance, the discrimination that led to my job loss was based on my protected class as an

Arab Muslim." (Doc. 140 at 7). But his minority status alone cannot give rise to an inference of discrimination.

In sum, Plaintiff has not shown circumstances giving rise to an inference that Defendant acted with intentional discrimination. Defendant has shown that there is no genuine dispute as to any fact that would give rise to an inference of discrimination and that it is entitled to judgment as a matter of law. Therefore, summary judgment on Plaintiff's Title VII discrimination claim is appropriate.

## B. Hostile Work Environment

Plaintiff also claims that he was subjected to a hostile work environment in violation of Title VII. This alternate theory of discrimination is actionable when a "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive workplace environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Like a claim based on discriminatory discharge or failure to hire, a Title VII hostile work environment claim requires a showing of intentional discrimination. *See*

- 14 -

*Huston v. Proctor & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

Plaintiff's hostile work environment claim is based on the conduct of his Honeywell supervisor, Jud Weiss. (See Doc. 140 at 5–6). He has not shown that this conduct was sufficiently "severe or pervasive" to establish a hostile work environment claim.

To satisfy this standard, "conduct must be extreme." *Nitkin v. Main Line Health*, 67 F. 4th 565, 570 (3d Cir. 2023) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Courts consider "'the frequency of the allegedly discriminatory conduct'" and "whether it involved 'physically threatening or humiliating acts, or mere offensive utterances.'" *Id.* at 571–72 (quoting *Harris*, 510 U.S. at 23).

Plaintiff worked at CB&I for 2 years. He has testified about his coworker's report of Weiss being "taken back" (Doc. 138-4 at 102:24–103:13), Weiss's statements during a meeting including "I don't think you know what you're doing," "I don't think you're focused enough," "I don't think you know how to be a good engineer," and "I don't think you know how to do your job" (Id. at 277:19–278:14), and Weiss's comment that "something about you … makes me uncomfortable." (Id. at 69:14–23). He has also submitted his own emails summarizing meetings in which Weiss is alleged

to have unfairly criticized Plaintiff's performance, behaved rudely, and assigned him too much work. (Doc. 140-3; Doc. 140-4).

Plaintiff has not described frequent, physically threatening, or humiliating harassment. What he has described may be an unprofessional or mismanaged workplace, but "Title VII … does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Selvato v. SEPTA*, 143 F. Supp. 3d 257, 266 (E.D. Pa. 2015) ("[T]he purview of Title VII does not extend to all workplace difficulties, even where the conduct at issue may be crass and unwarranted."). The specific instances of mistreatment which he has offered present a strained supervisor-employee relationship and incivility. But these occurrences, considered as a whole, do not rise to the level of extreme conduct actionable under Title VII. Therefore, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

### C. Retaliation

Finally, Plaintiff claims that he experienced unlawful retaliation. Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment … because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. §2000e-3(a). A retaliation claim requires a plaintiff to show "a causal

connection between the employee's protected activity and the employer's adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). No causal connection can be established "without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Id.* at 196.

Plaintiff has presented an email he sent Neff on November 21, 2014, in which he suggested that Weiss was discriminating against him because he is Muslim. (Doc. 140-4). He has also testified that he told plant manager William Olp that he was being discriminated against by Weiss. (Doc. 138-4 at 164:23–166:17).

Defendant argues that Plaintiff has not established a retaliation claim based on his termination because there is no evidence that Neff knew of Plaintiff's protected activity. (Doc. 139 at 37). Neff has declared that he did not regularly use his Honeywell email account, to which Plaintiff sent the November 21st email, and did not learn of that email until after Plaintiff's termination. (Doc. 138-5 ¶¶9–12). He has also declared that he was unaware of any complaints Plaintiff made to Honeywell personnel. (Id. ¶14). Defendant's statement of material facts, to which Plaintiff did not respond, asserts the same. (Doc. 138-1 ¶¶35–37).

Plaintiff characterizes the first three emails he has attached, (Doc. 140-1; Doc. 140-2; Doc. 140-3), as demonstrating his "harassment concerns" or "harassment complaints." (Doc. 140 at 3–4). But none of these allege racial, religious, or national origin discrimination. Only in the fourth email, (Doc. 140-4), does Plaintiff allege religious discrimination. He now asserts that "[t]here is no question that [Neff] received that email." (Doc. 140 at 7). But he did not respond to Defendant's statement of material facts, which stated that "Neff did not read or respond" to that email. (Doc. 138-1 ¶36 (citing Neff's Declaration, Doc. 138-5 ¶¶9–12)). That fact is thus deemed admitted pursuant to Local Rule 56.1. So, because it is uncontroverted that Neff was not aware of Plaintiff's protected activity, Plaintiff's retaliation claim based on his termination must fail.

And even if there existed any genuine dispute that Neff knew about Plaintiff's November 21st email, there is no evidence linking that knowledge and his decision to terminate Plaintiff.

Courts "consider a broad array of evidence in determining whether a sufficient causal link exists for a plaintiff to survive a motion for summary judgment" on a Title VII retaliation claim. *Daniels*, 776 F.3d at 196. "To demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if

- 18 -

unusually suggestive." *Id.* "In the absence of such a close temporal proximity," courts "consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Id.*

The court does not find the three-and-a-half-month period between Plaintiff's November 21, 2014 email and his February 4, 2015 termination unusually suggestive. Neither has Plaintiff presented other evidence suggesting a retaliatory animus on Neff's part.

Plaintiff argues that Neff "provided no work related reason for [his] termination." (Doc. 140 at 7). Plaintiff has testified that after Honeywell terminated him, Neff called him and said: "Honeywell terminated your employment, so we're also terminating your employment." (Doc. 138-4 at 127:3–18). Neff has declared that he terminated Plaintiff due to "a loss of confidence in his performance." (Doc. 138-5 at 3).

Plaintiff believes that his work performance did not justify termination. But he does not offer evidence showing inconsistencies in Neff's stated reason for terminating him. *See Boyle v. Penn Dental Med.*, 689 Fed. App'x 140, 144 (3d Cir. 2017) (non-precedential) ("[T]he fact that an employee

disagrees with an employer's evaluation of him does not prove pretext." (quoting *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991)*, overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993))). Inconsistencies on Neff's part could indicate that the reason given was not the *real* reason for termination but merely a pretext. That the stated reason was unfair, or overly harsh, is not Title VII's concern; Title VII prohibits only *retaliatory* reasons. Plaintiff has not shown that a loss of confidence was likely just a pretext.

And as to his retaliation claim based on not being hired for the CB&I engineering position in North Carolina, there is no evidence that the decisionmakers for that position were aware of any protected activity on Plaintiff's part. It is undisputed that Neff did not have supervisory responsibility over that decision and did not know who did. (Doc. 138-1 ¶47; Doc. 138-5 ¶17).

The court therefore concludes that Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

- 20 -

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted. An appropriate order will follow.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 13, 2024**
19-1305-04